RICHARD R. VAZZA, trustee, vs. BOARD OF APPEALS OF BROCKTON.

Plymouth. January 6, 1971. — April 12, 1971.

Present: TAURO, C.J., CUTTER, SPIEGEL, REARDON, & QUIRICO, JJ.

*Zoning,* Amendment of by-law or ordinance. *Subdivision Control. Statute,* Retroactive statute. *Equity Pleading and Practice,* Appeal, Case stated, Zoning appeal.

Upon appeal from the final decree in a suit in equity under G. L. c. 40A, § 21, heard upon a statement of facts constituting a case stated, this court decided the questions of law involved, and the form of decree required, unaffected by the decision of the trial judge. [257–258]

By virtue of G. L. c. 40A, § 7A, inserted by St. 1957, c. 297, land in a city shown on a preliminary subdivision plan and upon a later definitive subdivision plan duly approved by the planning board in 1960, and located in a residence zoning district in which use of land for multifamily apartment houses was then permitted, was exempt for three years after such approval from the application of an amendment of the zoning ordinance adopted in 1962 prohibiting such use [259–260]; but the land was not exempt from the application of such amendment for the two additional years following such three year period by reason of the amendment of c. 40A, § 7A, by St. 1961, c. 435, § 2, since the statutory amendment did not apply retroactively to plans approved prior to its effective date in 1961. [260–261]

Vazza *v.* Board of Appeals of Brockton.

The statement in St. 1965, c. 366, § 2, effective on July 26, 1965, that the provisions of c. 366, § 1, amending § 7A of G. L. c. 40A, should apply to subdivision plans of land "submitted to planning boards prior to its effective date" refers merely to plans which, although submitted to planning boards before July 26, 1965, were not approved until after that date. [261–262]

St. 1965, c. 366, § 1, amending § 7A of G. L. c. 40A, did not apply to land in a city shown on a subdivision plan approved and endorsed by the planning board prior to the effective date of the amendment. [262–263]

Statement of the time limits within which the provisions of zoning ordinances or by-laws in effect when subdivision plans of land were submitted to or approved by planning boards continued to govern the use of such land notwithstanding amendments of the ordinances or by-laws enacted subsequent to such submission or approval, as determined by G. L. c. 40A, § 7A, as originally enacted by St. 1957, c. 297; as amended by St. 1961, c. 435, § 2; and as amended by St. 1965, c. 366, § 1. [263–264]

Land shown on a preliminary subdivision plan and upon a later definitive subdivision plan approved by the planning board of a city in 1960, and endorsed by the board in 1961, when such land could lawfully be used for multi-family apartment houses under the city's zoning ordinance, could not lawfully be so used in 1967 when the owner thereof applied for building permits to erect such apartment houses thereon, in view of an amendment to the zoning ordinance in 1962 prohibiting such use. [264]

The Superior Court, upon deciding that the plaintiff in a suit in equity under G. L. c. 40A, § 21, by way of appeal from a decision of a zoning board of appeals was not entitled to relief, should not have dismissed the bill but should have entered a final decree stating that the decision of the board did not exceed its authority and that no modification of its decision was required. [264]

BILL IN EQUITY filed in the Superior Court on March 11, 1968.

The suit was heard by *Lurie, J.*

*Augustus P. Vitali* for the plaintiff.

*Joseph I. Sousa,* City Solicitor, for the defendant.

QUIRICO, J. This is an appeal under G. L. c. 40A, § 21, from a decision of the zoning board of appeals (board) of the city of Brockton upholding the action of the building inspector in denying the application of the plaintiff for permits to build four apartment houses. The case is before us on the plaintiff's appeal from a final decree of the Superior Court dismissing his bill of complaint.

The case was submitted to the Superior Court for decision

on an agreement which recited that it "set forth all of the facts relevant to the determination of this cause," and was in effect a case stated. Since we now have before us everything which was before the trial judge, we are required to decide the questions of law involved, and the form of decree required, unaffected by his decision. *Pitman* v. *Pitman*, 314 Mass. 465, 475. *Fiduciary Trust Co.* v. *Mishou*, 321 Mass. 615, 631. *Stamper* v. *Stanwood*, 339 Mass. 549, 551. *Fiduciary Trust Co.* v. *First Natl. Bank*, 344 Mass. 1, 4.

We summarize the pertinent facts agreed upon. On March 22, 1960, the owner of the land in question submitted a preliminary plan for its subdivision with the planning board of Brockton and later submitted a definitive plan which was approved by the planning board on December 21, 1960. The planning board endorsed its approval on the latter plan on February 7, 1961. All requirements of law for the giving of notices and holding of hearings in connection with the approval of the plan were complied with, and a copy of the plan was filed or recorded with the Land Court records at the registry of deeds for Plymouth County.

From a date prior to March 22, 1960, and continuing on February 7, 1961, the land in question was in a "Residence district" under the zoning ordinance of the city of Brockton, and the following uses were permitted in that district: "Single-family dwellings, two-family dwellings, apartment or tenement houses."

On August 6, 1962, the zoning ordinance was amended by striking out the use of land in a residence district for "apartment or tenement houses" and limiting the use to "[s]ingle family dwellings [and] two-family dwellings." Since that date the land has continued to be classified in a manner which limits its use to single family and two family dwellings.

On November 22, 1967, the plaintiff entered into a written agreement to purchase twelve of the lots shown on the subdivision plan described above from the then owner. The agreement made the obligations of the parties thereto expressly contingent upon the plaintiff's obtaining building permits enabling him to construct four multi-family apart-

ment houses on portions of the lots to be purchased. The plaintiff duly applied for the building permits on the same date. On November 27, 1967, the building inspector notified him that the applications were denied on the ground that the zoning ordinance did not permit the land in question to be used for apartment houses for occupancy by more than two families.

The plaintiff seasonably appealed the building inspector's denial of the application for the permits to the board under G. L. c. 40A, § 13. After due notice and hearing, the board voted unanimously to uphold the decision of the inspector and in due course it filed a written decision to that effect with the city clerk.

. The sole question presented for our decision on these facts is whether the land in question could be used for multifamily apartment house purposes on November 22, 1967, notwithstanding the amendment to the zoning ordinance on August 6, 1962. The answer to this question is controlled by the language of G. L. c. 40A, § 7A, as amended several times prior to November 22, 1967, and upon our decision whether one or more of such amendments should be applied retroactively to the subdivision plan involved in this case. We shall consider the statute in its original and amended versions during the years in question.

1. Section 7A as originally added to c. 40A by St. 1957, c. 297, read as follows: "Notwithstanding any other provision of law, no amendment to any zoning ordinance or by-law shall apply to or affect any lot shown on a definitive subdivision plan for residences which has been previously approved by a planning board until a period of three years from the date of such approval has elapsed . . . ." Changes made by St. 1959, c. 221, and St. 1960, c. 291, did not change the language quoted above. When the planning board approved the plan on December 21, 1960, the land in question could be used for apartment houses. The effect of § 7A was that the land could continue to be used for that purpose for three years thereafter, to December 21, 1963, notwithstanding the amendment to the ordinance on August 6,

1962, barring apartment houses in that location. *Smith* v. *Board of Appeals of Needham*, 339 Mass. 399. *McCarthy* v. *Board of Appeals of Ashland*, 354 Mass. 660.

2. Section 7A was amended by St. 1961, c. 435, § 2, effective August 3, 1961, to read that the "provisions of the [zoning] ordinance or by-law in effect at the time of the submission of the first submitted [subdivision] plan [whether preliminary or definitive] shall govern the land shown on such approved definitive plan *for a period of five years from the date of such approval* notwithstanding any other provision of law" (emphasis supplied). Thus, if this 1961 amendment to § 7A applied to the present case, the land in question could continue to be used for apartment house purposes until December 21, 1965, on the basis of the plan approved on December 21, 1960. Statute 1961, c. 435, § 2, contained no provision for its retroactive application to plans approved before its effective date.[1] In *Building Inspector of Acton* v. *Board of Appeals of Acton*, 348 Mass. 453, where the three year period provided by the original version of § 7A had expired on September 23, 1960, we held that the later enacted St. 1961, c. 435, § 2, which became effective on August 3, 1961, did not apply retroactively. We said: "The substantive rights of the owners of those lots [in litigation] and of owners of land in the area would have been affected if St. 1961, c. 435, § 2 (when it became effective nearly a year later), had reinstated retroactively the inapplicability of the 1960 by-law amendments to the lots. At least in the absence of very clear statutory language, we do not apply legislation retroactively in such a manner as to affect substantive rights." See *Doliner* v. *Planning Bd. of Millis*, 349 Mass. 691, 696-698.

Although the three year period provided by § 7A had not expired in the case before us when St. 1961, c. 435, § 2, took effect, the retroactive application of the amendment in this

---

[1] Chapter 435, § 3, expressly saved and continued any rights "with respect to land shown on any plan submitted to, or approved or endorsed by, any planning board prior to the effective date of [c. 435] . . . ." See *Doliner* v. *Planning Bd. of Millis*, 349 Mass. 691, 696, fn. 5.

case would as much affect substantive rights of landowners for an additional two year period as it would have in the *Acton* case. In the *Acton* case the retroactive application of the 1961 amendment would have affected substantive rights for the limited period from August 3, 1961 (effective date of St. 1961, c. 435, § 2) to September 23, 1962 (five years after approval of the subdivision plan). Its retroactive application in the present case would add two full years of effect on substantive rights by extending the three year period expiring on December 21, 1963, to a new expiration date of December 21, 1965. We conclude that St. 1961, c. 435, § 2, did not apply retroactively in this case, but our decision thereon does not affect the ultimate decision for reasons hereinafter stated.

3. Even if the amendment made by St. 1961, c. 435, § 2, were applied retroactively to the approval of the plan in question on December 21, 1960, that alone would not entitle the plaintiff to relief because the five year period allowed by that amendment expired on December 21, 1965, almost two years before the plaintiff applied for building permits. The plaintiff makes the further contention that he is entitled to the benefit of St. 1965, c. 366, § 1, which amended § 7A to read that the "provisions of the [zoning] ordinance or by-law in effect at the time of the submission of the first submitted [subdivision] plan [whether preliminary or definitive] shall govern the land shown on such approved definitive plan, *for a period of seven years from the date of endorsement of such approval* notwithstanding any other provision of law" (emphasis supplied). Thus, if this amendment were applied to the present case, the land in question could continue to be used for apartment house purposes until February 7, 1968, on the basis of the endorsement of approval of the plan on February 7, 1961.

In support of this contention the plaintiff makes two arguments. The first argument is that § 2 of St. 1965, c. 366, says that "[t]he provisions of this act shall apply to plans submitted to planning boards prior to its effective date." The effective date was July 26, 1965. We do not

construe this language to mean that c. 366 should apply to all plans which had been submitted to and approved by planning boards at any time within the seven years prior to July 26, 1965. We construe it as referring merely to those plans which, although submitted to planning boards before July 26, 1965, were not approved until after that date. It was merely a saving clause which made the new seven year period applicable to land shown on plans pending before planning boards, but not yet approved, on July 26, 1965. The second argument is based on the following statement in *Doliner* v. *Planning Bd. of Millis*, 349 Mass. 691, 698: "The only change . . . effected by c. 366, § 1, in § 7A, as it existed prior to this 1965 statute . . . was to alter, from five years to seven years, the period during which, with respect to previously approved plans, the zoning by-law in effect when a plan was filed would govern the land shown in the plan." That statement is but a small part of a discussion of § 7A in its entirety. Considering the entire discussion of § 7A in that decision, it appears that the words "previously approved plans" referred to subdivision plans which were approved by planning boards previous to the date that zoning ordinances or by-laws were amended in a manner affecting uses which were permitted when the plans were approved.

The history of § 7A shows a legislative intent to increase the period of time during which the provisions of zoning ordinances or by-laws in effect when subdivision plans are submitted to planning boards shall continue to govern the uses which may be made of the land shown on the plan notwithstanding subsequent changes in the ordinances or by-laws. However, the history shows no clear legislative intent to make the several increases in such periods apply retroactively. The plaintiff argues that the 1961 and 1965 amendments to § 7A should be given retroactive effect because on the effective date of each amendment the land in question "was still under the protection of G. L. c. 40 A, § 7A," as it existed before the succeeding amendment. We do not consider that to be a sufficient basis for concluding

that the several amendments should be applied retroactively in the absence of any clear statutory language to that effect.

Purchasers of real estate are entitled to rely on the applicable zoning ordinances or by-laws in determining the uses which may be made of the parcel they are buying and of other parcels in the same neighborhood. For many persons, particularly those purchasing houses, this is the largest single investment in their lives. It is important that such purchasers be able to determine with reasonable accuracy, before making that investment, just what the applicable zoning ordinances or by-laws are, and what uses they permit or prohibit. That determination must start with a reading of the zoning ordinances or by-laws existing at the time of the purchase. The purchaser should not be subjected to the impossible task, and corresponding risk, of speculating on the possibility that imprecise legislative language on the retroactivity of a statute may be construed in a manner which will permit the land being purchased, or neighboring land, to be used for purposes which zoning ordinances or by-laws existing at the time of purchase either do not expressly permit or which they expressly prohibit.

For all of the reasons discussed above, we hold that the amendment of § 7A by St. 1965, c. 366, § 1, does not apply to the land shown on the subdivision plan approved by the planning board on December 21, 1960, which the plaintiff has contracted to purchase.

In general, the time limits within which the provisions of zoning ordinances or by-laws in effect on the submission or approval of subdivision plans continue to govern the use of the land shown on the plan, notwithstanding later amendments to the ordinances or by-laws, are the following: (a) three years from date of approval for land on plans having the benefit of § 7A as originally enacted by St. 1957, c. 297, and which were approved prior to August 3, 1961, which was the effective date of St. 1961, c. 435, § 2; (b) five years from date of approval for land on plans approved

between August 3, 1961, and July 26, 1965, which was the effective date of St. 1965, c. 366, § 1; and (c) seven years from date of endorsement of approval for land on plans approved after July 26, 1965.

We hold that on November 22, 1967, when the plaintiff applied for building permits to erect four multi-family apartment houses, the land on which he proposed to build could not lawfully be used for such a purpose. The building inspector properly denied the requested permits, and the board properly affirmed the action of the inspector.

The final decree in the Superior Court ordered the plaintiff's bill dismissed.[2] Although the plaintiff is not entitled to relief, the bill should not have been dismissed. The final decree is reversed and a decree is to be entered stating that the decision of the board did not exceed its authority and that no modification of its decision is required.

*So ordered.*

---

[2] The judge had previously filed a document entitled "Interlocutory Decree" and the plaintiff appealed therefrom. Despite its title the document was actually an order for the entry of a final decree. Our reversal of the final decree makes it unnecessary for us to consider the purported appeal from the order for decree.